Dear Mr. Greenfield:
On behalf of the retirement board of the City of Coral Gables, you have asked for my opinion on substantially the following question:
May members of the City of Coral Gables retirement board promulgate a rule allowing the use of electronic media technology in conducting board meetings and stating that there is no physical presence requirement to constitute a quorum for the conduct of official business, that is, that participation by a member of the board by electronic media technology constitutes his or her presence for purposes of establishing a quorum?
In sum:
The City of Coral Gables retirement board is not authorized to adopt a rule allowing the use of electronic media technology in conducting board meetings and providing that participation by a member of the board by electronic media technology constitutes his or her physical presence at the meeting for purposes of establishing a quorum.
According to your letter, the retirement board of the City of Coral Gables consists of nine unpaid members, five of whom are appointed by the city commission and four of whom are representatives from various employee groups. You advise that the employee representatives are frequently unable to attend meetings due to emergency situations or are required to leave meetings to respond to such emergencies. The professional and business representative members "find that their business or professional schedules conflict with a scheduled Board meeting." Finally, you indicate that the board's consultants and money managers are located in various parts of the United States and cannot easily reschedule their calendars to accommodate meetings that may be cancelled due to the absence of a quorum. You state that it would facilitate the functions of the retirement board to be allowed to conduct its business through the use of electronic media and to meet the quorum requirement by counting both those board members who are physically present at a meeting as well as those who could attend remotely through electronic means. My review of the city's pension plan ordinances reveals that provisions exist specifically creating separate retirement systems for police officers and firefighters independent of this general retirement board for city employees. Thus, no discussion of any requirements of pension boards operating under Chapters 175 and 185, Florida Statutes, is contained herein.
Administration of the City of Coral Gables retirement system is placed in the retirement board.[1] Among the specific powers the board may exercise in administering the retirement system are the following:
"(1) To determine all facts with regard to any participant's age, normal retirement date, disability, amount of compensation, length of service and credited service and date of initial coverage under the system and, by application of the facts so determined and any other facts deemed material, to determine a participant's amount of benefit.
(2) To make rules and regulations for the administration of the system which are not inconsistent with the terms and provisions hereof.
 * * *
(5) [T]o select, employ and compensate from time to time such pension consultants, actuaries, accountants, attorneys, investment managers and other agents and employees as the retirement board may deem necessary or advisable in the proper and efficient administration of the system and the trust agreement. . . .
 * * *
(11) To cause a general investigation to be made by a competent actuary, and at least once every five years thereafter, of the retirement, disability, separation, mortality, interest and employee earning rates; recommend, as a result of such investigation, the tables to be adopted for all required actuarial calculations; and cause an annual determination to be made by a competent actuary of the liabilities and reserves of the system and the annual determination of the amount of the contributions required by the city and to maintain the funds of the system on a sound actuarial basis. Any investigations, audits, determinations, or actuarial studies shall be at the expense of the retirement system.
(12) To cause an audit of the affairs of the system to be made annually by an independent certified public accountant and submit a copy thereof to all interested parties as soon as possible after the end of such fiscal year."[2]
The code of ordinances provides a quorum requirement for the board:
"A quorum of the retirement board, for the retirement board to transact business, shall consist of six retirement board members."[3]
Further, "[a]ll actions and decisions of the retirement board shall require the concurrence of a majority of the members of the retirement board."[4]
Florida's Government in the Sunshine Law, section 286.011, Florida Statutes, ensures a right of access to government proceedings at the state and local levels.[5] The Sunshine Law was enacted in the public interest to protect the public from "closed door" politics and must be broadly construed to effect its remedial and protective purpose.[6] A fundamental requirement of the Government in the Sunshine Law is that meetings of entities subject to the provisions of the Sunshine Law be "open to the public." "Open to the public," as that phrase is used in section 286.011, Florida Statutes, means open to all persons who choose to attend.[7] Further, Florida courts have held that the Sunshine Law extends to discussions and deliberations as well as formal actions taken by a public board or commission.[8]
Although members of municipal boards do not appear to be precluded from utilizing the Internet to conduct informal discussions, such discussions which are subject to the Sunshine Law are required to be accessible to the public.[9] Groups such as the retirement board of the City of Coral Gables must, therefore, ensure that access is provided to all members of the public who wish to attend such discussions.[10]
In addition, access must be available not only to those members of the public possessing a computer with internet access, but also to those who may not have access to the Internet. As this office concluded in Attorney General Opinion 2001-66, places within the jurisdiction of a board subject to the Sunshine Law must be designated where computers with internet access will be made available to members of the public who wish to participate in such discussions. The notice of these discussions, required under the Sunshine Law, should include the locations where such computers with Internet access will be located.
For meetings where a quorum is required, this office, in a number of formal and informal opinions, has stated that concerns about the validity of official actions taken by a public body when less than a quorum is present suggest a very conservative reading of the statute.[11] This office has concluded that, in the absence of a statute to the contrary, the requisite number of members must be physically present at a meeting in order to constitute a quorum.[12] While a quorum is not required for a meeting to be subject to the Government in the Sunshine Law, [13] to the extent that any advisory body is required to have a quorum in order to conduct official business, it appears that the members of these bodies must, in the absence of a statute to the contrary, be physically present in order to constitute a quorum.[14]
The term "quorum" is defined as "the number of members of a group or organization required to be present to transact business legally, usually a majority[;]"[15] and "[t]he minimum number of members (usu. a majority of all the members) who must be present for a deliberative assembly to legally transact business."[16] (e.s.) Thus, a quorum requirement, in and of itself, contemplates the physical presence of the members of a board or commission at any meeting subject to the requirement. While I acknowledge that the City of Coral Gables ordinances creating the retirement board and empowering it do not contain language referring to the physical presence of a quorum of the members for the transaction of board business, I believe that the legislative requirement of a quorum and the designation of the number required to constitute a quorum argues for the physical presence of that number of board members at a meeting.
You have called to my attention provisions of Chapter 120, Florida Statutes, the Administrative Procedures Act, which authorizes state agencies and their boards and commissions to adopt rules providing procedures for conducting public meetings, hearings, and workshops, in person and by means of communications media technology.[17]
This office, in Attorney General Opinion 98-28, considered whether this statute would authorize a school board, granted home rule powers and exercising those powers for school purposes, to adopt its own rules governing the use of electronic media technology for its meetings. The opinion notes provisions of the school code requiring the physical presence of a quorum and concludes that the district's grant of home rule authority would allow the district to adopt its own rules governing the use of electronic media technology for its meetings, subject to the limitation that a quorum of the board's members must be physically present at the meeting. However, unlike a school board or municipality, an administrative agency possesses no home rule powers and may only act within the scope of its legislative authorization.[18]
The retirement board of the City of Coral Gables is a local board made up of "citizens of the city" and persons employed by the city. You have advised this office that problems have arisen not because of the physical disability of the members of the board or the fact that members are scattered throughout the state, but that business and professional schedules conflict with scheduled board meetings and members of the board have been called away to respond to work-related emergencies. In addition, the board's consultants and money managers find it difficult to schedule meetings with the board under these circumstances. In discussing the Legislature's determination that state agencies and their boards and commissions can conduct meetings via communications media technology, this office recognized the practicality of members from throughout the state participating in meetings of the board or commission and noted that:
"While the convenience and cost savings of allowing members from diverse geographical areas to meet electronically might be attractive to a local board or commission such as a school board, the representation on a school board is local and such factors would not by themselves appear to justify or allow the use of electronic media technology in order to assemble the members for a meeting."[19]
The overarching concern of the Legislature with meaningful interaction by the public with their local representatives would not appear to be well served by allowing local governmental entities to conduct business at arms length through the use of communications media technology.
Likewise, in this situation, the occasional inconvenience to local board members of attending a meeting of the retirement board in person would not appear to this office to overcome the quorum requirements in the Coral Gables ordinance and the public policy consideration of meaningful interaction by the public with their local representatives as required by the Government in the Sunshine Law. This office has issued a number of opinions condoning the use of electronic media technology when an absent member is physically unable to attend a meeting due to medical treatment or physical infirmity. The retirement board of the City of Coral Gables may use electronic media technology in order to allow a physically absent member to attend a public meeting if a quorum of the members of the board is otherwise physically present at the meeting site. This office has also suggested that local governmental entities may conduct informal discussions and workshops over the Internet, provided proper notice is given and interactive access by members of the public is provided. However, those opinions specifically recognize that where a quorum is necessary for action to be taken, physical presence of the members making up the quorum is required in the absence of a statute providing otherwise.[20]
Accordingly, it is my opinion that the City of Coral Gables retirement board is not authorized to promulgate a rule allowing the use of electronic media technology in conducting board meetings and providing that participation by a member of the board by electronic media technology constitutes his or her physical presence for purposes of establishing a quorum.
Sincerely,
Bill McCollum Attorney General
BM/tgh
[1] Art. II, s. 50-82, Code of Ordinances of the City of Coral Gables.
[2] Id. at s. 50-94.
[3] Supra n. 1 at s. 50-89.
[4] Supra n. 1 at s. 50-90.
[5] See also Art. I, s. 24, Fla. Const., providing a right of access to meetings of collegial public bodies. And see FrankenmuthMutual Insurance Company v. Magaha,769 So. 2d 1012, 1021 (Fla. 2000), noting that the Sunshine Law "is of both constitutional and statutory dimension."
[6] See Wood v. Marston, 442 So. 2d 934, 938 (Fla. 1983);Canney v. Board of Public Instruction of Alachua County,278 So. 2d 260 (Fla. 1973); Board of Public Instruction of BrowardCounty v. Doran, 224 So. 2d 693 (Fla. 1969).
[7] See, e.g., Ops. Att'y Gen. Fla. 99-53 (1999) and 01-66 (2001).
[8] See Hough v. Stembridge,278 So. 2d 288 (Fla. 3d DCA 1973) (Sunshine Law applies to any gathering, whether formal or casual, of two or more members of the same board or commission to discuss some matter upon which foreseeable action will be taken by the board or commission).
[9] See, e.g., Op. Att'y Gen. Fla. 89-39 (1989), stating that a board of county commissioners may use a computer network in the course of conducting county business, but cautions that any discussions between the members of the board via computer on issues pending before the board would be subject to the provisions of s. 286.011, Fla. Stat.
[10] See Op. Att'y Gen. Fla. 01-66 (2001).
[11] See, e.g., Inf. Op. to John C. Randolph, dated November 24, 1997, and Ops. Att'y Gen. Fla. 01-66 (2001), 03-41 (2003), and 08-65 (2008).
[12] See, e.g., Ops. Att'y Gen. Fla. 83-100 (1983), 89-39 (1989), and 01-66 (2001).
[13] See n. 8, supra.
[14] See Op. Att'y Gen. Fla. 98-28 (1998), recognizing that the authorization in s. 120.54(5)(b)2., Fla. Stat., for the use of communications media technology to conduct meetings applied only to state agencies.
[15] Webster's New Universal Unabridged Dictionary p. 1588 (2003).
[16] Black's Law Dictionary p. 1284 (8th ed., 2004).
[17] Section 120.54(5)(b)2., Fla. Stat.
[18] An administrative agency possesses no inherent power and may exercise only such authority as is expressly or by necessary implication conferred by law. See Lang v. Walker,35 So. 78, 80 (Fla. 1903), Gessner v. Del-Air Corporation,17 So. 2d 522 (Fla. 1944), Ops. Att'y Gen. Fla. 2004-30, 86-46 (1986), 78-101 (1978), 75-299 (1975), 71-28 (1971), 73 C.J.S.Public Administrative Law and Procedure s. 50 (1983). Any reasonable doubt as to the lawful existence of a particular power sought to be exercised by an administrative agency must be resolved against the exercise thereof. State ex rel. Greenberg v. FloridaState Board of Dentistry, 297 So. 2d 628 (Fla. 1st DCA 1974),cert. dismissed, 300 So. 2d 900 (Fla. 1974); City of CapeCoral v. G.A.C. Utilities, Inc., of Florida,281 So. 2d 493 (Fla. 1973).
[19] See Op. Att'y Gen. Fla. 98-22 (1998).
[20] See Ops. Att'y Gen. Fla. 01-66 (2001) and 02-82 (2002).